UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MORGAN WEIDINGER,

                    Plaintiff,

          v.

ERIK DJOKIC,

                    Defendant.

---

22-CV-8388 (RA)

MEMORANDUM
OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Morgan Weidinger, a professional musician and performing artist, brings this tort

action against Defendant Erik Djokic, alleging that Djokic sent her lewd and threatening messages

over the course of about ten months in 2021 and followed her to concert venues where she was

performing. Pending before the Court is Djokic's motion to dismiss three of the claims in the First

Amended Complaint (the "Complaint"), and his motion to stay the case until the resolution of a

parallel criminal proceeding against him. For the reasons that follow, the motion to stay is granted;

the Court will defer a decision on Djokic's motion to dismiss until the stay is lifted.

## FACTUAL BACKGROUND[1]

Weidinger is a resident of New York who performs in New York State and maintains a

presence on social media platforms, streaming services, and blogs to promote her music and live

---

[1] The facts are drawn from the First Amended Complaint (the "Complaint") as well as from the
parallel criminal proceeding. *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 88 (2d Cir. 2012)
(taking judicial notice of details in related criminal proceeding); *Applestein v. Kleinhendler*, No. 20-CV-
1454 (AMD) (VMS), 2021 WL 493424, at *1 (E.D.N.Y. Feb. 10, 2021). They are assumed to be true for
the purpose of the instant motions. *See, e.g., Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017);
*605 Fifth Prop. Owner, LLC v. Abasic, S.L.*, No. 21-CV-811 (VSB), 2021 WL 2737391, at *1 n.1
(S.D.N.Y. June 30, 2021).

performances. Compl. ¶ 6. She alleges upon information and belief that Djokic is a resident of Evanston, Illinois and Weston, Connecticut. *Id.* ¶ 4.

Around January 2021, Djokic began sending Weidinger messages on social media that became increasingly threatening and harassing. *Id.* ¶ 8. According to the Complaint, Djokic sent Weidinger photos and videos of his genitals and of himself masturbating. *Id.* He professed his love for Weidinger, called her his wife and attempted to send her packages. *Id.* Djokic told Weidinger he was buying a house close to her so that they could live together, claimed to know her family, and allegedly contacted Weidinger's sister. *Id.*

On July 29, 2021, Djokic appeared at one of Weidinger's shows in Manhattan. *Id.* ¶ 9. Although the venue's security successfully persuaded Djokic to leave, Djokic's appearance at one of Weidinger's shows placed her "in immediate and genuine fear of being attacked, assaulted, and/or sexually assaulted by" Djokic. *Id.* Weidinger emailed Djokic on August 6, 2021, telling him that "he was scaring her, and that she wanted him to leave her alone and never contact her again." *Id.* ¶ 12. In fear of being harmed by Djokic, Weidinger hired private security. *Id.* ¶ 15.

On October 2, 2021, Djokic again appeared at one of Weidinger's shows, this time at an outdoor music festival in Kingston, New York. *Id.* ¶ 16. Weidinger saw Djokic approaching her while she was walking from the bathroom facilities back to her vehicle, and ran in the opposite direction, contacting her private security and the Kingston Police Department. *Id.* The Kingston Police temporarily detained Djokic and confiscated a pocketknife he had in his possession, but did not place him in custody. *Id.* On October 17, 2021, Djokic attempted to see Weidinger a third time in person, traveling to Kingston, New York. *Id.* ¶ 17. Weidinger filed an order of protection against Djokic in Kingston City Court on October 17, 2021, which was served on him two days later. *Id.*

On December 22, 2021, a criminal complaint was filed against Djokic in the Southern District of New York for one count of stalking in violation of 18 U.S.C. §§ 2261A(1)(B), 2261A(2)(B) and 2. *United States v. Djokic*, 21 Mag. 12285 (S.D.N.Y. Dec. 22, 2021); *see also* Krissoff Decl. Ex. B (the "Criminal Complaint"). Although the Criminal Complaint does not identify Weidinger by name, it alleges substantially similar conduct to that alleged in this action, including that Djokic sent harassing emails on an almost daily basis for around ten months, as well as photos of his genitalia and videos of himself masturbating. The Criminal Complaint further alleges that Djokic called "Victim-1" his wife, demanded that she respond to him, and attempted to confront her "at least twice" at her musical performances, including on July 29, 2021 in New York and October 2, 2021 in Kingston, New York.

On January 12, 2023, Magistrate Judge Lehrburger approved an eighteen-month deferred prosecution agreement between Djokic and the government. *United States v. Djokic*, 21 Mag. 12285 (S.D.N.Y. Jan. 12, 2023); *see* Krissoff Decl. Ex. D. The agreement requires Djokic to be employed or attend school and prohibits him from contacting Weidinger and from leaving the Northern District of Illinois without the permission of his pretrial services officer. It also requires him to maintain a curfew and submit to location monitoring, as well as to pay restitution in the amount of $14,760. The agreement provides that the government will move to dismiss the Complaint against Djokic after the completion of his term of supervision if he complies with the conditions of the agreement. It also makes clear that the U.S. Attorney's Office "may at any time proceed with prosecution" if the Office "in its sole discretion, [should] deem such action advisable."

**PROCEDURAL BACKGROUND**

Weidinger initiated this action on September 30, 2022, asserting tort claims for negligent infliction of emotional distress, intentional infliction of emotional distress, assault, and negligence. After Djokic moved to dismiss the Complaint, Weidinger amended, filing the First Amended Complaint on January 13, 2023. On February 23, 2023, Djokic moved to dismiss the instant Complaint and stay the action.

**DISCUSSION**

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d at 96 (2d Cir. 2012) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).[2] Although the Constitution "does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings," this Court may nonetheless "decide in its discretion to stay civil proceedings ... when the interests of justice seem ... to require such action." *Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) (internal quotation marks omitted). As the Second Circuit has observed, "[a] stay can protect a civil defendant from facing the difficult choice between being prejudiced in the civil litigation, if the defendant asserts his or her Fifth Amendment privilege, or from being prejudiced in the criminal litigation if he or she waives that privilege in the civil litigation." *Louis Vuitton*, 676 F.3d at 97. The party seeking a stay "bears the burden of establishing its need." *Capak v. Epps*, No. 18-CV-4325 (RA), 2018 WL 6726553, at *2 (S.D.N.Y. Dec. 21, 2018).

In determining whether to stay a civil proceeding pending resolution of an ongoing criminal proceeding, courts in this Circuit consider such factors as (1) the extent to which the issues in the

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

criminal case overlap with those presented in the civil case, (2) the status of the criminal case, (3) the private interests of and burden on the defendants, (4) the private interests of the plaintiffs, (5) the interests of the courts, and (6) the public interest. *See Louis Vuitton*, 676 F.3d at 99; *Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) (listing factors and staying case where overlap between civil case and pending criminal case created "quandary of [defendants] choosing between waiving their Fifth Amendment rights or effectively forfeiting the civil case"). Consideration of these factors, however, "can do no more than act as a rough guide for the district court as it exercises its discretion," which still "demands a particularized inquiry into the circumstances of, and the competing interests in, the case." *Louis Vuitton*, 676 F.3d at 99 (quoting *Banks v. Yokemick*, 144 F. Supp. 2d 272, 275 (S.D.N.Y. 2001)).

Djokic argues that a stay is warranted because proceeding in this action while the criminal case is pending would undermine his Fifth Amendment privilege against self-incrimination. He contends that because there is substantial overlap between this action and the criminal action, he would face considerable prejudice absent a stay, and that Weidinger would not be unduly prejudiced if a stay is granted. The Court agrees.

### 1. Overlap of the Cases

As an initial matter, Djokic argues that there is "complete overlap" between his civil and criminal cases, thus supporting the grant of a stay. Def. Mot. at 19. Parallel cases substantially overlap when they "arise from the same facts and involve nearly identical issues." *SEC v. Blaszczak*, No. 17-CV-3919 (AJN), 2018 WL 301091, at *2 (S.D.N.Y. Jan. 3, 2018). Here, both cases arise from the same alleged facts, namely, that Djokic sent unwanted and harassing emails to Weidinger and then attempted to confront Weidinger at two concerts in July 2021 and October

2021. *See* Compl. ¶¶ 8–18; Criminal Compl. ¶¶ 4–15. Indeed, Weidinger's Complaint alleges nearly the same conduct as the Criminal Complaint, including facts that go directly to the elements of the government's charge against Djokic for stalking. *Compare* Compl. ¶¶ 33–39 (alleging that Djokic sent "hundreds of harassing and threatening emails" and "cross[ed] state lines" to "stalk, harass, and menace" Weidinger, "intend[ing] to cause [Weidinger] severe emotional distress") *with* 18 U.S.C. § 2261A (making liable a defendant who crosses state lines "with the intent to … harass [or] intimidate … another person" and "cause[d], attempt[ed] to cause, or would be reasonably expected to cause substantial emotional distress" or who uses electronic communications to harass or intimidate and that causes or would be reasonably expected to cause emotional distress). Given the near-complete overlap between the conduct alleged in the two cases as well as the similarity in the legal issues, this factor weighs heavily in favor of a stay. *See In re 650 Fifth Ave.*, No. 08-CV-10934 (RJH), 2011 WL 3586169, at *3 (S.D.N.Y. Aug. 12, 2011) ("The most important factor at the threshold is the first factor: the degree to which the civil issues overlap with the criminal issues.").

## 2. Status of the Criminal Proceeding

Weidinger argues that, even though Djokic's criminal proceeding is currently pending, the criminal case against him is "essentially resolved" and "there can be no legitimate claim of prejudice" in proceeding with civil discovery because he has entered into a deferred prosecution agreement with the government. Pl. Mot. at 12-13.

A court's decision to grant a stay based on the status of one's criminal proceeding should be guided by "whether a prosecution is likely and imminent as opposed to a remote or purely hypothetical possibility." *Louis Vuitton*, 676 F.3d at 100 n.14. "Granting a stay of discovery may be especially appropriate where a party under criminal indictment is also required to defend a civil

suit involving the same matter." *Am. Express Bus. Fin. Corp. v. RW Pro. Leasing Servs. Corp.*, 225 F. Supp. 2d 263, 265 (E.D.N.Y. 2002). Here, the criminal proceeding against Djokic has advanced beyond the investigation phase and a criminal complaint has been filed against him. *Blaszczak*, 2018 WL 301091, at *2 (staying case where defendants had been indicted); *Corcoran L. Grp., L.L.C. v. Posner*, No. 09-CV-1861 (WHP), 2009 WL 1739702, at *1 (S.D.N.Y. June 10, 2009) (staying case where criminal complaint had been filed against defendant). As Djokic's agreement with the government makes clear, the U.S. Attorney's Office "may at any time proceed with prosecution" if the Office "in its sole discretion, [should] deem such action advisable." Krissoff Decl. Ex. D. He has not been convicted of the charge against him, nor has he pleaded guilty or admitted to the conduct alleged in the criminal complaint; as such, the criminal action against him is neither "remote" nor "hypothetical." *Louis Vuitton*, 676 F.3d at 100, n.14; *c.f. Capak v. Epps*, 2018 WL 6726553, at *3 (finding that the second factor weighed against staying case where defendant had already pleaded guilty in criminal case). Accordingly, the status of the criminal action against Djokic weighs in favor of a stay.

### 3. Prejudice to Djokic

The third factor also weighs in favor of granting a stay. As the Second Circuit has explained, a defendant in a civil proceeding who invokes the Fifth Amendment as a result of an overlapping criminal proceeding "risk[s] the adverse inference [in the civil proceeding] arising from [his or her] assertion of the privilege." *Louis Vuitton*, 676 F.3d at 97–98. "But if civil defendants do not elect to assert their Fifth Amendment privilege, and instead fully cooperate with discovery, their 'testimony ... in their defense in the civil action is likely to constitute admissions of criminal conduct in their criminal prosecution.'" *Id.* (quoting *SEC v. Boock,* No. 09-CV-8261 (DLC), 2010 WL 2398918, at *2 (S.D.N.Y. June 15, 2010)). Given the overlap between Djokic's

criminal proceeding and this action as well as the status of the criminal proceeding, there is a significant risk that discovery in this case could result in Djokic being forced to choose between admitting to conduct with implications in his criminal case on the one hand, and foregoing available defenses in this action or creating an adverse inference with respect to Weidinger's civil claims on the other. *See, e.g., Scottsdale Ins. Co. v. Above Call Sec. & Investigations, Inc.*, No. 21-CV-1418 (NGG) (PK), 2022 WL 125801, at *5 (E.D.N.Y. Jan. 13, 2022); *In re Worldcom, Inc. Sec. Litig.*, No. 02-CIV-3288 (DLC), 2002 WL 31729501, at *7 (S.D.N.Y. Dec. 5, 2002) ("[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify.").

Weidinger relies on *Citibank, N.A. v. Hakim*, No. 92-CV-6233 (MBM), 1993 WL 481335 (S.D.N.Y. Nov. 18, 1993) in support of her argument that Djokic's Fifth Amendment concerns do not warrant granting a stay, but that case is inapposite here. In *Citibank*, only one of six defendants moved to stay the action on the basis that he was facing a parallel criminal investigation, and that defendant had not been indicted. The other cases Weidinger cites are also distinguishable. In *United States v. Dist. Council of New York City & Vicinity of United Bhd. of Carpenters & Joiners of Am.*, 782 F. Supp. 920, 925 (S.D.N.Y. 1992), the defendants had not been indicted or had already been acquitted, and in *Paine, Webber, Jackson & Curtis Inc. v. Malon S. Andrus, Inc.*, 486 F. Supp. 1118, 1118 (S.D.N.Y. 1980), the sole defendant who requested a stay because of criminal charges against him was one of eight defendants in the civil proceeding.

In sum, because Djokic "faces a very substantial risk of self-incrimination if he chooses to defend against [Weidinger's] civil charges" and "an adverse inference may be drawn if he chooses instead to invoke his Fifth Amendment privilege," the third factor weighs in favor of a stay. *In re Worldcom*, 2002 WL 31729501, at *7.

4. **Prejudice to Weidinger**

Weidinger argues that the fourth factor weighs in her favor because she will face undue prejudice if a stay is granted. While Weidinger undoubtedly has an interest in expeditiously proceeding with the civil case, the stay that Djokic seeks is limited in time by the duration of the deferred prosecution agreement. Weidinger does not argue, moreover, that the prejudice she faces is different in kind or degree from the prejudice faced by plaintiffs in other cases. *See, e.g., 380544 Canada, Inc. v. Aspen Tech., Inc.*, No. 07-CV-1204 (JFK), 2007 WL 2049738, at *3 (S.D.N.Y. July 18, 2007) (denying motion to lift stay during pendency of parallel criminal proceeding where plaintiffs failed to identify "unique circumstances" supporting finding of undue prejudice).

5. **The Public Interest and Interest of the Court**

The final two factors—the public interest and the interest of the court—do not weigh strongly in favor of either party. No particular public interest is served by permitting this case to proceed immediately given that the Djokic, as part of the deferred prosecution agreement, has agreed not to leave the Northern District of Illinois without the permission of his pretrial services officer and may not contact Weidinger. In the event that the criminal proceeding does proceed to a trial or Djokic pleads guilty, moreover, "the conviction of a civil defendant … can contribute significantly to the narrowing of issues in dispute in the overlapping civil cases and promote settlement of civil litigation." *In re Worldcom, Inc. Sec. Litig.*, 2002 WL 31729501, at *8.

**CONCLUSION**

In sum, "the inconvenience and delay to plaintiff[] that will unfortunately be caused by a stay are outweighed by the defendant['s] significant Fifth Amendment concerns." *Transworld*, 886 F. Supp. at 1140–41. At this time, "[j]ustice is better served by staying this proceeding until discovery can resume, free from the Fifth Amendment concerns attending [Djokic's] criminal case." *Scottsdale Ins*., 2022 WL 125801, at *5. The Clerk of Court is thus respectfully directed to stay this action *sine die*.

No later than two weeks after the end of the period of the deferred prosecution agreement, the parties shall file a joint letter indicating their availability for a status conference. In the event the period of the deferred prosecution agreement is extended, or if other circumstances arise supporting a good faith basis to reevaluate the stay, Weidinger may move to vacate the stay. The Court will defer consideration of the motion to dismiss until the stay is lifted.

SO ORDERED.

Dated:      June 21, 2023
            New York, New York

                                        _____
                                        Ronnie Abrams
                                        United States District Judge